UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LISA MARIE SWANK, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   v. | )    CIVIL NO. 1:16cv416 |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. §1383. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for SSI must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant has not engaged in substantial gainful activity since August 30, 2013, the application date (20 CFR 416.971 *et seq.*).

2

2. The claimant has the following severe impairments: lumbar degenerative disc disease (DDD) with osteoarthritis and chronic joint pain, obesity, anxiety/panic disorder and depression (Exhibits 2F to 20F)(20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with standing and or walking four out of eight hours and sitting six out of eight hours with additional limitations as follows: The individual is able to sit for 20 minutes at one time, and then must stand for five minutes, and able to stand for 15 minutes at one time, and then must sit for five minutes, while remaining on task and at the workstation when standing or sitting. Individual is also limited to occasional climbing of ramps and stairs, as well as ladders, ropes or scaffolds, occasional kneeling, crouching, crawling and working on uneven flooring or a flooring that otherwise requires balance. Further limitation includes only occasional and superficial contact and interaction with co-workers. Individual could also have only occasional and superficial contact with the general public and would not be able to perform a job that entailed work-related interaction and conversation with the general public. Individual is precluded from work that entails giving presentations or instructions to co-workers or other groups of individuals and the individual cannot work in an environment that contains a large number of people, defined as 50 or more. Finally, while able to interact and converse with supervisors long enough to receive work instruction, the individual can only work a job that otherwise involves occasional and superficial interaction with supervisors.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on April 13, 1984, and was 29 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national

economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 30, 2013, the date the application was filed (20 CFR 416.920(g)).

(Tr. 17- 30).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on July 3, 2017. On October 27, 2017, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162

n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff filed an application for supplemental security income (SSI) in August 2013, asserting that she had been disabled since June 2013. (Tr. 231-32.) Her application was denied initially and upon reconsideration. (Tr. 166-67, 173-74.) In May 2015, Plaintiff appeared with counsel and testified, along with a vocational expert (VE), at a hearing before an ALJ. (Tr. 38-97.) The ALJ issued a decision in June 2015, finding that Plaintiff was capable of performing a reduced range of light work despite her severe impairments. (Tr. 15-31). In October 2016, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), which rendered the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff was born in 1984. She was 19 years old as of the alleged onset of disability and 29 years old as of the application date. Plaintiff alleges the following medical facts. On September 8, 2003, an MRI showed a small central L4-L5 disk extrusion and an S-2 perineural Tarlov cyst. In 2003 or 2004, a discogram confirmed the chronic pain producing mechanism. Throughout the fall of 2009, she received spinal injections. On March 5, 2011, a consultative examiner identified deficits in range of motion to her thoracolumbar spine and a left positive straight leg raising test. On November 15, 2012, her primary care physician treated her pain with Robaxin and Ultram. A November 26, 2012 MRI and X-ray showed continued problems, but also revealed retrolisthesis, dextroscoliosis, and spurring. On November 28, 2012, her primary care physician added Vicodin to her pain medication regimen and noted radiating pain down her left leg. On October 14, 2013, a consultative examiner identified deficits in range of motion to her

5

lumbar spine, and bilateral positive straight leg raising tests.

Plaintiff alleges the following additional orthopaedic conditions: reverse curvature of the neck, right toe pain, carpal tunnel syndrome (with wrist braces), calcium deposits in wrists, and wrist crepitus.

Plaintiff further alleges she suffers from obesity, hypertension, shingles, polycystic kidney disease, anticardiolipin antibody, headaches, and sinusitis. She asserts that her primary care physician also suspected Ehlers Danlos Syndrome.

Additionally, Plaintiff asserts that she suffers from major depressive disorder, generalized anxiety disorder, panic disorder with agoraphobia, and social phobia. On January 11, 2011, consultative psychologist, James O'Keefe, Psy. D. concluded that Plaintiff "would not be expected to complete a normal workday." On October 12, 2013, a subsequent psychological examiner, Amanda L. Mayle, Psy D., rendered an opinion that Plaintiff contends was largely consistent with Dr. Keefe's opinion, except for the agoraphobia component of the panic disorder diagnosis.

In support of remand, Plaintiff first argues that the ALJ erred in evaluating the medical opinions.   The record shows that the ALJ gave consultative examiner Dr. O'Keefe's opinion little weight (Tr. 25-26). In January 2011, Dr. O'Keefe noted that Plaintiff presented with a depressed mood and reported considerable anxiety "to the extent she does not leave the house unless accompanied by her mother or husband" (Tr. 437). However, Plaintiff's cognitive functions were intact, and she was alert and oriented during the course of the examination (Tr. 438). Plaintiff could correctly identify the date, day of the week, month, year, and season, and computed serial 7's from 100 to 65 correctly and without hesitation (Tr. 438). Plaintiff also

6

spelled the word "world" backwards, and her "attention and concentration were reasonably intact" (Tr. 438). Dr. O'Keefe diagnosed Plaintiff with major depressive disorder, severe without psychotic features; panic disorder with agoraphobia; and chronic pain (Tr. 439). Dr. O'Keefe opined that Plaintiff was capable of managing her finances because her cognitive skills were intact, but her prognosis "would be much better if she would become actively involved in a treatment program" (Tr. 439). He further opined that Plaintiff would be unable to perform simple or repetitive tasks, nor could she maintain regular attendance at work due to her anxiety about leaving her house (Tr. 440). Dr. O'Keefe also opined that Plaintiff could not perform work on a consistent basis because of her emotional condition (Tr. 440). Dr. O'Keefe opined that Plaintiff would be capable of accepting and following instructions given her by supervisory personnel, but would be unable to work beside coworkers or engage with the public because of her anxiety (Tr. 440). According to Dr. O'Keefe, usual workplace stress would exacerbate Plaintiff's depression and anxiety (Tr. 440).

The ALJ gave Dr. O'Keefe's opinion little weight. The ALJ perceived inconsistencies between Dr. O'Keefe's limited view of Plaintiff's abilities and her performance during the examination (Tr. 25). The ALJ cited Plaintiff's ability to perform serial 7's and her logical thought and speech patterns, good judgment, fair insight, and intact cognitive function (Tr. 25). The ALJ concluded that "[t]he testing results greatly limit the weight that can logically be afforded to that opinion" (Tr. 26, 438, 440). The ALJ also noted that the lack of clinical deficits and Plaintiff's "acknowledged minimal need for mental health treatment" contradicted Dr. O'Keefe's opinion of Plaintiff's functional abilities (Tr. 26). Likewise, the ALJ discounted Dr. O'Keefe's opinion because it appeared to be based on Plaintiff's subjective allegations and "not

7

on the essentially unremarkable clinical findings and observations" (Tr. 26).

The ALJ also noted the timing of Dr. O'Keefe's assessment, which was three months after the birth of Plaintiff's second child in September 2010 (Tr. 26). The ALJ claimed that the proximity of the examination to the birth of her second child "would reasonably explain the significant level of limitation in daily activities" (Tr. 26). Plaintiff reported to Dr. O'Keefe that she experienced increased symptoms due to being "stuck in the house all the time with both kids," which also disturbed her sleep, limited her energy, and prevented her from taking long walks, riding her bicycle, working on her car, and dancing (Tr. 26, 438). The ALJ stated that "[s]uch expression of a young mother is entirely understandable," but "[i]t is not compelling evidence showing she has a disabling physical or mental impairment" (Tr. 26). The ALJ also opined that, while Plaintiff claimed that her limitations began in 2003, such significant functional deficit, if accurate, would have prevented Plaintiff from developing friends, dating her husband for two years, and beginning a family (Tr. 26).

Three months after Dr. O'Keefe's assessment, Patricia Bruner, Ph.D., reviewed Plaintiff's records (Tr. 108). Dr. Bruner opined that Plaintiff was moderately limited in her social functioning and in maintaining concentration, persistence, or pace, but only mildly limited her in daily activities (Tr. 103). She also opined that Plaintiff would be moderately limited in her ability to perform activities within a schedule and maintain regular attendance, but would not be significantly limited in carrying out simple or detailed instructions (Tr. 106-07). Both she and Leslie E. Montgomery, Ph.D., who reviewed Plaintiff's records on reconsideration, concluded that Plaintiff's allegations and Dr. O'Keefe's opinion were inconsistent with the medical evidence overall and with Dr. O'Keefe's observations and mental status examination results (Tr. 26, 108,

8

122). Dr. Montgomery noted that there were "[i]nconsistencies in [Plaintiff's] reports of impairment and her in psych[ological] [consultative examination] versus observation at the medical [consultative examination] and medical appointments" (R. 108, 122). Dr. Montgomery opined that, based on all of the evidence, Plaintiff "appear[ed] able to engage in work with limited social contact" (R. 108, 122). Drs. Bruner and Montgomery explained that their RFCs were less restrictive than Dr. O'Keefe's because Dr. O'Keefe's "opinion relied heavily on the subjective report of symptoms and limitations provided by [Plaintiff], and the totality of the evidence does not support the opinion" (Tr. 109, 123). The ALJ gave weight to the opinions from Drs. Bruner and Montgomery because he felt they "comport[ed] with the . . . evidence as a whole" (Tr. 26).

The ALJ also assessed consultative examiner Dr. Mayle's opinion from October 2013 (R. 27). Dr. Mayle assessed Plaintiff's immediate and remote memory as adequate (Tr. 486-87). She observed that Plaintiff's mood was depressed and anxious and her affect was restless, but her speech and thought processes were normal (Tr. 488). Plaintiff's insight and judgment were adequate, she sustained attention, and her grasp of similar and difference concepts were adequate (R. 489). Again, Plaintiff could complete the serial 7's and was oriented in all spheres (R. 489). Dr. Mayle diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, panic disorder without agoraphobia, and social phobia (Tr. 488). Dr. Mayle opined that Plaintiff's level of functioning would not likely change in the near future, but the ALJ opined that Plaintiff's symptoms and functioning at the time of the examination, which occurred when Plaintiff was neither seeking treatment or taking medication, supported no more than moderate limitations (Tr. 27, 489).

9

Two months later, Donna Unversaw, Ph.D., reviewed Plaintiff's records on behalf of the state agency (Tr. 148). Dr. Unversaw opined that Plaintiff had moderate limitations in functioning but could nevertheless understand, remember, and follow simple instructions and tasks with reasonable pace and persistence, while also sustaining and tolerating superficial and casual interactions with others (Tr. 143-44, 148). Dr. Unversaw noted that to the extent that Dr. Mayle assessed Plaintiff's limitations as serious, that opinion was due little weight because Plaintiff's functioning contradicted a finding of serious symptoms (Tr. 27, 144). The ALJ gave Dr. Unversaw's opinion greater weight than the allegations and testimony urging total disability (Tr. 27). The ALJ opined that Dr. Unversaw's opinion was "more consistent with and more supported by the overall evidence as a whole; whereas, allegations and testimony are not similarly supported or consistent" (Tr. 27).

Plaintiff argues that the ALJ's evaluation of these medical opinions was flawed. Plaintiff contends that based on the medical opinions, the ALJ should have included additional restrictions for Plaintiff's limitations in concentration, persistence, or pace. She cites the opinions from consultative examiners Drs. Mayle and O'Keefe, as well as the reviewing doctors who opined that Plaintiff had some moderate limitations in concentration, persistence, or pace. Plaintiff argues that the ALJ substituted his own judgment and impermissibly "played doctor" by giving Dr. O'Keefe's opinion little weight.

The ALJ held that Plaintiff had mild difficulties in maintaining concentration, persistence, or pace (Tr. 19). The Commissioner argues that the ALJ's determination finds support in Plaintiff's ability to perform serial 7's at her consultative examinations with Drs. Mayle and O'Keefe (Tr. 19, 438, 487). Both Drs. Mayle and O'Keefe opined that Plaintiff's memory and

10

reasoning were adequate and intact and that her thought processes were normal (Tr. 19, 438, 486-88). The ALJ also noted that Plaintiff retained the concentration, persistence, or pace to drive independently, read daily, study her religion, engage on social media, and shop online with her phone (Tr. 20, 323, 327, 488). She also maintained the ability to plan out her sons' homeschool curriculum (Tr. 20, 327 ("I can read well and it's probably what I do the most, since I homeschool Jayden and have to plan it out. I read daily.")). The ALJ opined that this list of activities was "not consistent with someone who experiences more than mild limitations in concentration, persistence, or pace" (Tr. 20).

This court finds that the ALJ impermissibly failed to fully consider Dr. O'Keefe's opinion and give it proper weight. Moreover, the ALJ's reasoning is faulty in many places. The ALJ places great weight on the fact that Plaintiff's cognitive functions were intact. However, Plaintiff is not alleging poor cognition. Plaintiff has presented evidence that she suffers from anxiety and a panic disorder. It is very unclear why the ALJ focused so heavily on the fact that Plaintiff was alert and able to compute serial 7's. None of the factors recited by the ALJ relate to Plaintiff's alleged disabling conditions.

Additionally, the ALJ's reliance on the fact that Plaintiff had given birth to a child three months prior to Dr. O'Keefe's opinion is not supported by the record. Although Plaintiff stated that being stuck in the house exacerbated her symptoms, there is no apparent reason to discredit the underlying conditions that created the symptoms in the first place.

Moreover, the ALJ's claim that Plaintiff must not be limited because she had friends, dated, married and had children is not supported by the record. Plaintiff is alleging anxiety, panic attacks and depression. There is no evidence that these conditions totally preclude all interaction

11

with other individuals. Accordingly, due to the ALJ's lack of proper reasoning in his analysis of Dr. O'keefe's opinion, remand is warranted.

Plaintiff also argues that the ALJ improperly analyzed her daily activities. First, she argues that the ALJ gave too much weight to her regular attendance at church in violation of her First Amendment right to the free exercise of religion. However, the ALJ did not overemphasize or give too much weight to Plaintiff's church attendance, did not insinuate that attending religious service was a reason that Plaintiff was not disabled, or find that her attendance at church meant she had no social functioning impairments.

Plaintiff contends that the ALJ impermissibly equated her ability to care for and homeschool her two sons, while also taking care of her infant, with her ability to perform full-time work. (Tr. 19-21, 24). Plaintiff claims that the ALJ erred by alluding to Plaintiff's caretaking and home schooling duties multiple times in his decision. It is not disputed that the ALJ is required to discuss the evidence, and the record does contain references to Plaintiff's childcare duties in the function reports and in her testimony (Tr. 314 ("[Plaintiff] home schools her 5 year old."), 323 ("I home school my oldest son for a few hours. . . I prepare lunch and dinner for my family."), 324 (I take care of "[m]y two children, Jayden, age 5 and Benjamin, age 3. I prepare meals, bathe and dress them.")). The ALJ concluded that because Plaintiff could accomplish those tasks, in addition to driving, shopping, reading, engaging in social media, she was not as limited as she alleged (Tr. 19-20, 24, 28-29).

Plaintiff cites *Beardsley v. Colvin*, 758 F.3d 834 (7th Cir. 2014) to support her assertion that the ALJ's consideration of her childcare duties was improper. In *Beardsley* the plaintiff was caring for her mother and the decision disapproved of equating the ability to care for a family

member with the challenges of daily employment. 758 F.3d at 838. While the Social Security regulations specifically require that ALJs consider a claimant's activities of daily living. 20 C.F.R. § 416.929(c)(3), this court finds that the ALJ went a little overboard in this case. Plaintiff home schools a five year old for and a three year old a few hours a day. While such a job requires patience, there is no evidence to suggest that it qualifies Plaintiff to work full time. Likewise, driving, reading, and checking Facebook or Twitter a few times a day do not equate to a full time job. Moreover, Plaintiff's daily activities could just as easily support her claim of anxiety, panic attacks, and depression. It is much easier, socially, to homeschool than to deal with the public school system (parent-teacher meetings, car lines at pick up, birthday parties, etc.). Likewise, reading and social media are two activities that seem likely to be pursued by many people with Plaintiff's conditions simply because they provide socialization and mental stimulation without requiring face-to-face contact or participation in a group. Accordingly, the ALJ's decision must be remanded for a proper evaluation of Plaintiff's daily activities.

Finally, Plaintiff argues that the ALJ erred by limiting Plaintiff to tasks where she could sit for 20 minutes at a time, and then stand for five minutes, and could stand for 15 minutes and then sit for five, while remaining on task and at her work station when standing or sitting (Tr. 20). Plt. Br. 21-22. That argument fails because the Seventh Circuit has held that an RFC must "be specific" about the frequency of standing and sitting. *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012). Here, the ALJ explicitly outlined Plaintiff's limitations for sitting and standing (Tr.20). In *Arnett*, the ALJ improperly determined only that the claimant must be able to alternate between sitting and standing "throughout the workday," but the ALJ in this case specifically limited Plaintiff to work where she could sit for up to 20 minutes at a time and could then stand

for five minutes; stand for up to 15 minutes and then sit for five (Tr. 20). These specific limitations distinguish this case from *Arnett*, and this Court will not remand on this point.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED for further proceedings consistent with this Opinion.

Entered: December 11, 2017.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court